The STATE of Ohio, Appellee,

v.

PAYNE, Appellant.

[Cite as *State v. Payne,* 149 Ohio App.3d 368, 2002-Ohio-5180.]

Court of Appeals of Ohio,
Seventh District, Harrison County.

No. 01–533 CA.

Decided Sept. 26, 2002.

Matthew Puskarich, Harrison County Prosecuting Attorney, for appellee.

Willard Hanner, for appellant.

---

Vukovich, Presiding Judge.

{¶ 1} Defendant-appellant Danielle Payne has appealed after being convicted in the Harrison County Court on 12 counts of cruelty to animals. The issue before us concerns the trial judge's refusal to recuse himself from the case based upon a comment he made in chambers on the morning of the trial. For the following reasons, appellant's conviction and sentence are affirmed.

{¶ 2} On August 17, 1999, appellant's six horses were seized after the execution of a search warrant in Cadiz, Ohio. Apparently, all horses had thrush from standing in unsanitary conditions. One had a severe case, causing its heel to disintegrate; another had an even more severe case with excessive rotting. The horses were underweight from lack of food and had poor muscle tone from lack of exercise. They had halter marks across their nose from continually wearing tight halters; some had semiembedded halters, causing raw indents and hair loss. The stallion was continually muzzled. The two stalls that were not in a state of uncleanliness were clean only because those horses had resorted to eating their fecal matter, which stained their teeth black and is a sign of hunger or overconfinement. They also chewed wood due to their lack of access to roughage. The abundance of urine in the stalls caused a strong ammonia odor, which caused respiratory ailments in some horses. The horses had no bedding. Their water in their buckets was dirty and stale. Even though the Humane Society took custody for a while and helped increase the horses' weights, upon return to appellant, their weights dropped again.

{¶ 3} Appellant was charged with two counts per horse; one count was based upon R.C. 959.13(A)(1) concerning lack of food and damage from thrush, and one count was based upon R.C. 959.13(A)(4) concerning a lack of exercise and clean

air. Appellant originally pleaded guilty; however, this court allowed her to vacate her plea based on a failure to follow Crim.R. 11 colloquy and procedure for the waiver of certain constitutional rights. *State v. Payne* (Dec. 19, 2000), 7th Dist. No. 00521CA, 2000 WL 1902205.

{¶ 4} Prior to the bench trial on August 22, 2001, the prosecutor and defense counsel met in the trial judge's chambers. This visiting judge had been appointed by the Supreme Court after appellant successfully sought recusal of the previous judge. Apparently, when asked how he was doing that morning, the visiting judge jokingly replied that he was in "a convicting mood." Over an hour after the comment was made, the case went on the record, and defense counsel stated that after relaying the judge's comment to appellant, she desired recusal. The judge refused to recuse himself. Specifically, he characterized the comment as "done without proper thought," "casual remark," "foolish remark," "in jest," and "stupid." The judge stated to defense counsel, "you know the kind of person and judge I am." The judge noted that he did not know appellant and harbored no prejudice or bias towards her.

{¶ 5} The case then proceeded to trial. Appellant did not cross-examine the state's witnesses, presented no testimony in defense, and made no closing arguments. Thereafter, the court found appellant guilty on all 12 counts. As for sentencing on these second-degree misdemeanors, the court ordered appellant to pay a fine of $100 per count, forfeit the horses, and reimburse the Humane Society for their past care of the animals. The trial court specifically stayed its entry pending the Supreme Court's ruling on the affidavit of disqualification that counsel threatened to file. However, the affidavit was never filed. Rather, appellant appealed to this court, where she presents one assignment of error, which contends: "Where immediately prior to the commencement of a trial without the intervention of a jury, the judge makes the remark in chambers that he's in 'a convicting mood,' it is reversible error for him to refuse to recuse himself on proper request."

{¶ 6} Pursuant to constitutional and statutory law, the Chief Justice of the Supreme Court or his designee has exclusive jurisdiction to determine a claim that a common pleas court judge is prejudiced or biased. See, e.g., Section 5(C), Article IV of the Ohio Constitution; R.C. 2701.03. When an affidavit is filed in the Supreme Court, the trial judge is without authority to determine any matter in the case that would affect a party's substantial rights. R.C. 2701.03(D)(1). The affidavit of disqualification must be filed not less than seven days before the next scheduled hearing, if a hearing is scheduled. R.C. 2701.03(B). However, this time limit is not mandatory in cases where the basis for disqualification was unknown until after the limit had passed and that is explained in the affidavit. See, e.g., *In re Disqualification of Cooperrider* (2001), 94 Ohio St.3d 1233, 1233–

1234, 763 N.E.2d 602; *In re Leskovyansky* (1999), 88 Ohio St.3d 1210, 723 N.E.2d 1099; *In re Disqualification of Badger* (1989), 43 Ohio St.3d 601, 538 N.E.2d 1023. It has always been the law that as long as the affidavit is "filed at the earliest possible moment," the time limit is irrelevant. *Wolf v. Marshall* (1929), 120 Ohio St. 216, 165 N.E. 848 (explaining that the legislature would never intend to bar parties from filing an affidavit where it was not possible to file it prior to the deadline).

{¶ 7} According to defense counsel's statements on the record before trial, the comment by the trial judge occurred over an hour before trial. Had an affidavit of disqualification been filed, the Supreme Court would not have rejected the affidavit as being untimely, because the reason was not revealed until the seven-day deadline had already passed. Upon the mere filing of the affidavit with reasons for the lateness, the trial judge would have been without authority to proceed. See *State ex rel. Stern v. Mascio* (1998), 81 Ohio St.3d 297, 299–300, 691 N.E.2d 253 (granting a writ of prohibition that barred the judge from proceeding on the case until the Chief Justice addressed the affidavit of disqualification and that voided all orders made by the judge after the affidavit was filed; also noting the 1996 changes in R.C. 2701.03, which explicitly deprive the trial court of jurisdiction to continue). Additionally, appellant had the option of filing a motion for a new trial and filing a timely affidavit of disqualification as to ruling on that motion. Moreover, the trial court specifically stayed its judgment in this case pending a ruling by the Supreme Court on the affidavit of disqualification, which appellant never filed.

{¶ 8} As mentioned, the determination that a common pleas court judge should have recused himself or should be disqualified due to bias or prejudice is the exclusive province of the Chief Justice or his designee. In *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 8 O.O.3d 438, 377 N.E.2d 775, the Ohio Supreme Court reversed an appellate court's judgment that a common pleas court judge had a conflict of interest. It is important to observe how the dissent argued that the court of appeals could address the issue because one of the specific reasons supporting a finding of judicial bias did not become known to the plaintiff's attorney until oral argument, when the appellate judges informed him that the defendant's counsel was the trial judge's nephew. However, the majority of the Supreme Court held that the appellate court had no authority to make disqualification rulings and to void judgments on that basis. Id. at 441–442, 8 O.O.3d 438, 377 N.E.2d 775.

{¶ 9} The appellate court can review jury trials to determine whether a judge's behavior prejudiced or biased the jurors. *State v. LaMar*, 95 Ohio St.3d 181, 2002–Ohio–2128, 767 N.E.2d 166, ¶ 35; *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 373 N.E.2d 1244. However, we cannot reverse a

common pleas court's refusal to recuse himself in a bench trial based on allegations of his biased comments, because as we have previously held, the appellate court is without jurisdiction to pass upon issues of disqualification or to void a judgment on the basis of a common pleas court's bias or prejudice. *Bundschu v. Naffah* (2002), 147 Ohio App.3d 105, 768 N.E.2d 1215; *Wolk v. Wolk* (Sept. 25, 2001), 7th Dist. No. 98CA127, at 9, 2001 WL 1199836; *State v. Cope* (July 17, 2001), 7th Dist. No. 2000CO38, at 3, 2001 WL 844754. Thus, we cannot rule on the propriety of the court's denial of appellant's motion for recusal, and we cannot declare that the trial judge should have been disqualified for bias or prejudice. See, also, *Grogan v. T.W. Grogan Co., Inc.* (2001), 143 Ohio App.3d 548, 552, 758 N.E.2d 702; *Berdyck v. Shinde* (1998), 128 Ohio App.3d 68, 81, 713 N.E.2d 1098; *State v. Blankenship* (1996), 115 Ohio App.3d 512, 516, 685 N.E.2d 831; *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 11, 663 N.E.2d 657; *State v. Dougherty* (1994), 99 Ohio App.3d 265, 269, 650 N.E.2d 495; *State v. Ramos* (1993), 88 Ohio App.3d 394, 398, 623 N.E.2d 1336.

{¶ 10} Even if we were permitted to review the act of alleged bias because it occurred so close to commencement of trial, we do not find that the solitary comment made as a joke in chambers to counsel was compelling evidence sufficient to rebut the presumption against bias. Contrary to appellant's contentions, we do not believe that a judge's response that he is in "a convicting mood" establishes that he portrayed "a hostile feeling or spirit of ill-will" or evidences a "fixed anticipatory judgment." See *In re Disqualification of Cleary* (2000), 88 Ohio St.3d 1220, 1222–1223, 723 N.E.2d 1106. See, also, *In re Disqualification of Kate* (1999), 88 Ohio St.3d 1208, 1209, 723 N.E.2d 1098 (where the affidavit was filed after commencement of trial and presentation of evidence). In fact, the trial judge apologized and explained that he was joking, that he had never met appellant, and that he harbored no bias or prejudice.

{¶ 11} Although we technically cannot reverse a common pleas court's judgment based upon failure to recuse, we can address allegations that a defendant's due process rights were violated. See, e.g., *Cleveland v. Shaffer* (1996), 112 Ohio App.3d 631, 634, 679 N.E.2d 742 (finding that pretrial statements that the recanting domestic violence victim is a liar and that the defendant has no defense deprived the defendant of due process). An appellate court can review the fairness of the trial to determine whether due process rights were violated and remand for a new trial. We note that even in reversing and remanding, the appellate court cannot prohibit the same trial judge from presiding; however, that procedure gives the defendant the opportunity to file an affidavit of disqualification in the Supreme Court for review by the Chief Justice.

{¶ 12} Thus, we construed appellant's assignment in this more addressable light and reviewed the transcript for due process violations. Using the same

analysis as set forth during our bias evaluation, we find that the court did not violate appellant's due process right to a fair trial. We add that the court made no comments about appellant, the case, or the evidence. The court did not deprive appellant of a defense or prohibit any trial conduct. The state's evidence was certainly sufficient, and there is not the slightest indication that the weight of the evidence leaned anywhere but against the defendant.

{¶ 13} Finally, regardless of appellant's belief that the court prejudged her guilt by joking that he was "in a convicting mood," appellant still should have put on a defense, since the court did not lack jurisdiction to proceed in the absence of a filed affidavit.

{¶ 14} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

WAITE and DEGENARO, JJ., concur.